## Case No. 17,459.

### WESTON v. WHITE et al.

[13 Blatchf. 447; 2 Ban. & A. 364.] [1]

Circuit Court, D. Connecticut.   July 8, 1876.

PATENT SUITS—PRELIMINARY INJUNCTIONS—ABAN-
DONMENT OF INVENTION—LACHES
—PULLEY BLOCKS.

1. The validity of the letters patent granted to Thomas A. Weston, August 6th, 1867, for differential pulley blocks. seems to be generally conceded in the United States, although no adjudication has ever been had in our own courts.

2. Where no question is made as to infringement or priority, or as to the novelty or patentability of the invention, and where the public generally have acquiesced in the claim of the patentee to a monopoly, an adjudication by a court of law or equity is not required before a preliminary injunction will be granted.

3. In December, 1859, W. filed a caveat, which, by renewal, was in force until December, 1861. In January, 1861, D. obtained a patent for the same invention, W. not having been notified of D.'s application. In December, 1861, W. applied for a patent, which was rejected because of D.'s patent. In July, 1862. W., who had been in England since 1858, first heard of such rejection. In July, 1863, his attorneys, who were also D.'s attorneys, obtained a declaration of interference, but gave no notice of it to W., and the matter was decided in favor of D., by default, but W. was not notified of the result. In July, 1865. such attorneys applied for a second interference, which was declared in November, 1865. In July, 1866, W. returned from abroad, and employed other counsel, but no testimony was taken on the part of W., and the matter was decided in favor of D., by default. In October, 1866, W. withdrew his application of December, 1861, with the intention and for the purpose of filing a new application, which was done in December, 1866. In January, 1867, a new interference was declared, which, in June, 1867, was decided in favor of W. When the first two interferences were applied for W. was detained in England by a writ of ne exeat, and was not aware that his attorneys were D.'s attorneys. Articles containing the patented invention were made and sold by others than W. in 1863, 1864, and 1865. *Held*, that the application of 1866 was intentionally in continuation of the prior application; that W. had not been guilty of laches: that he had not abandoned his application or his invention; and that such public use of the invention did not avoid the patent.

[This was a bill in equity by Thomas A. Weston against William H. White and others. Heard on motion for a preliminary injunction. For a prior hearing, see Case No. 17,458.]

Edmund Wetmore, for plaintiff.

George E. Terry and Stephen W. Kellogg, for defendants.

SHIPMAN, District Judge.   This is a motion for a preliminary injunction to restrain the defendants from an infringement of letters patent granted to Thomas A. Weston, on August 6th, 1867, for differential pulley blocks. English letters patent bearing date April 25th, 1859, and published October 22d,

1859, had been issued to Mr. Weston, for the same invention. It has been decided by this court [Case No. 17,458] that the American patent will expire on October 22d, 1876. The defendants do not deny infringement, and do not substantially deny the patentability of the invention, or that Weston was the first and original inventor. The validity of the patent seems now to be generally conceded in this country, although no adjudication has ever been had in our own courts. In the case of Tangye v. Stott [14 Wkly. Rep. 128], which was tried before Sir W. P. Wood, Vice Chancellor, and a special jury, in December, 1865, the priority of Weston's claim to originality, and the validity of the English patent, were sustained by the verdict. Where no question is made as to infringement or priority, or as to the novelty or patentability of the invention. and where the public generally have acquiesced in the claim of the patentee to a monopoly, an adjudication by a court of law or of equity is not required before a preliminary injunction will be granted.

The objection to the validity of the patent is upon the ground that, prior to the application upon which the patent was issued, and which application was dated October 3d, 1866, the patented article had been in public or common use in this country. The history of the invention, and of the various applications by Weston for a patent, and of the use of the invention in this country, is as follows:   Weston, on December 31st, 1859, filed in the patent office a caveat for this invention, which was renewed, and was in force until December 31st, 1861. On December 6th, 1860. J. J. Doyle filed his application for a patent for substantially the same invention, and a patent was issued to him on January 8th, 1861. The commissioner of patents did not give Weston the notice required by the 12th section of the act of July 4th, 1836 (5 Stat. 121), of the existence of Doyle's application. The examiner of the patent office, in his decision of June 8th, 1867. upon an interference between Doyle and Weston. says: "Notwithstanding the fact that Weston had a caveat properly filed and in full force, Doyle files an application and obtains his patent for the pulley which is fully described in said caveat, without the slightest reference being had to the latter. The fact cannot be denied, that Doyle's patent. under the circumstances, no notice having been taken of Weston's caveat, was improperly issued, and that an act of great injustice. unintentionally, of course, was perpetrated towards Weston." On December 14th, 1861, Weston made an application for a patent for the invention described in his caveat. which application was refused on December 18th, 1861, on account of the existence of Doyle's patent. In July, 1862, Weston, who had been in England since the year 1858. first heard of the rejection of his application. In March. 1863. he took meas-

---

1 [Reported by Hon. Samuel Blatchford, District Judge, reprinted in 2 Ban. & A. 364, and here republished by permission.]

ures, through his attorneys in New York, who had renewed his caveat, and who were also Doyle's attorneys, to obtain a patent. The attorneys, on July 14th, 1863, asked the patent office to declare an interference, which was declared July 16th, 1863, and the first Monday of September, 1863, was appointed for the hearing. No notice was given to Weston of this interference, and nothing was done by the attorneys prior to the day of the hearing, on which day judgment went, by default, in favor of Doyle, but no notice of this result was communicated to Weston, who was still in England, and whose presence there was demanded. Early in 1865, Weston communicated with his attorneys, who, on July 12th, 1865, asked of the patent office the declaration of a second interference, which was declared on November 20th, 1865, and the hearing was appointed for the first Monday of May, 1866. No steps were taken on behalf of Weston by his attorneys, who were still attorneys also for Doyle, to prepare for this hearing. In July, 1866, Weston returned to this country, and employed other counsel, who asked for a postponement of the hearing, on August 28th, 1866, which request could not be granted. He was obliged to let the case go by default, and, on October 17th, 1866, judgment pro forma was given in favor of Doyle, in the absence of testimony on the part of Weston. On December 1st, 1866, Weston made another application for a patent, and, on January 1st, 1867, a new interference was declared, and a decision was rendered June 10th, 1867, in favor of Weston. At the time of making the first two applications for interference, Weston was detained in England by a writ of ne exeat, issued in proceedings growing out of the suit in favor of Tangye, and was unaware that his attorneys were also the attorneys of Doyle, and they, as might be expected, neglected the business of one of their clients. The laches of the attorneys should not be visited upon Weston, by reason of the fact that their conduct was, at least, constructively fraudulent. Neither was he, by reason of his compulsory detention in England, and his ignorance that his interests in this country were in jeopardy, guilty of laches in the prosecution of his application. The application for a patent was withdrawn about October 17th, 1866, for the purpose of filing a new petition, and with that intention at the time of the withdrawal. The new application was for the same invention as the one which was claimed in his original application and caveat. This invention and the original application have never been abandoned by Weston.

In 1863, Samuel Hall's Son & Co., a firm in the city of New York, made and sold differential pulleys, which were exact imitations of the patented invention, although they were stamped as if made under Doyle's patent. The Doyle pulley was not successful. In 1864, the firm removed to Newark, and engaged in the business upon quite a large scale. James Bird, of New York, also made the same pulleys in 1865. The defendants base their objection to the validity of the patent upon the ground that the manufacture and sale of the Weston pulleys, in 1863, 1864 and 1865, constituted a public or common use of the patented article, prior to the application of Weston for his patent in 1866, and that, therefore, the patent is invalid, under the 6th and 7th sections of the act of March 3d, 1839 (5 Stat. 354).

There is no doubt that the Weston pulleys were in public or common use in this country as early as the year 1863, and, if no application had been made by Weston prior to December, 1866, or if the prior application which he did make had been abandoned, it is true that the patent would be invalid. But, it is found that an application was made in 1861, which was improperly rejected, and which was not withdrawn until October, 1866, when it was withdrawn for the purpose of filing a new application for the same invention which was originally claimed, and that the application of 1866 was intentionally in continuation of the previous application for substantially the same invention, and that no laches or fault is attributable to Weston for this apparent delay after the first rejection of his application, and that he had neither abandoned his application nor his invention. "If an applicant for a patent choose to withdraw his application for a patent, intending, at the time of such withdrawal, to file a new petition, and he accordingly does so, the two petitions are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law." Godfrey v. Eames, 1 Wall. [68 U. S.] 317. This statement of the law presupposes that the original application is an existing, and not an abandoned, application. For, it is believed that the supreme court "did not intend to decide that every subsequent application for a patent should be deemed, in judgment of law, to relate back to the first, whatever the interval of time, or the intervening acts of the applicant between them," although the applicant might have wished or intended that such result should take place, when he filed his new application. Bevin v. East Hampton Bell Co. [Case No. 1,379]. The continuity of the two applications is a question of fact, to be determined, in each case, upon an examination of its own circumstances. In order to ascertain this fact, the trier will find whether the inventor has abandoned his original application, either by his own will, or by his acts, and whether the new application is substantially for the same invention which was originally claimed. If the two applications are found to be continuous, and it has been therefore proved that the delay in making the new application, after the rejection of the first, has not been unreasonable,

under the circumstances of the case, and if the invention has not been abandoned to the public, the public use, in order to invalidate the patent, must be a use prior to the original and continuing application. Public or common use subsequent to the date of the original application, if that has been a continuing one, and the two petitions are "parts of the same transaction," will not avoid the patent. Godfrey v. Eames, 1 Wall. [68 U. S.] 317; Dental Vulcanite Co. v. Wetherbee [Case No. 3,810]; Adams v. Jones [Id. 57]; Howe v. Newton [Id. 6.771]; Blandy v. Griffith [Id. 1,529]; Smith v. Prior [Id. 13,095]; Singer v. Braunsdorf [Id. 12,897]; Bevin v. East Hampton Bell Co. [supra]. In this case, it is not claimed that there was any common or public use in this country, of this invention, prior to the original application.

The invention of Weston has been of great utility and has gone into extensive use. The defendants have recently engaged in the manufacture of pulleys, and were early warned of the consequences of infringement. There seems to be no equitable reason why a preliminary injunction should be refused. The motion for a preliminary injunction should be granted.